UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VERONICA ASHLEY,<br>Plaintiff,<br><br>V.<br><br>PARAMOUNT HOTEL GROUP, INC.; PARAMOUNT MANAGEMENT ASSOCIATES, LLC; FAIRFIELD INN BY MARRIOTT, Successors in Interest to Chalet Susse International, Inc.; JOHN DOE, Numbers 1 through 10,<br>Defendants. | : | C.A. No. 05-031L |

**PARAMOUNT HOTEL GROUP, INC. AND PARAMOUNT MANAGEMENT ASSOCIATES, LLC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S COMPLAINT**

Defendants, Paramount Hotel Group, Inc. and Paramount Management Associates, LLC ("Defendants"), move pursuant to Fed. R. Civ. P. 56 and Rhode Island Local Rule 12.1 for summary judgment on Plaintiff's Complaint. As set forth in more detail in its supporting memoranda, the sole count against Defendants alleges a violation of the Rhode Island Fair Employment Practices Act ("RIFEPA"). In light of the undisputed facts and as a matter of law, Plaintiff cannot establish a case against Defendants of race discrimination under the RIFEPA. Therefore, summary judgment should be entered in Defendants' favor.

In support of this motion, Defendants submit a Rule 12.1 Statement of Undisputed Facts and supporting memorandum of law, together with related documents and materials adduced in discovery.

Pursuant to Local Rule 12(b), Defendants request oral argument. Defendants believe that oral argument will allow them to respond to legal or factual issues raised by Plaintiff in her response to this motion.

P129390.1

PARAMOUNT HOTEL GROUP, INC
AND PARAMOUNT MANAGEMENT
ASSOCIATES, LLC

By their Attorneys,

Andrew B. Prescott (#3758)
Stacie Boeniger Collier (#6059)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030

Dated: November 28, 2005

CERTIFICATE OF SERVICE

I hereby certify that I caused to be sent by hand, a copy of the within MOTION FOR SUMMARY JUDGMENT to Dawn Oliveri, Esq., 160 Plainfield Street, Providence, RI 02909 on this 28th day of November, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VERONICA ASHLEY,<br>Plaintiff,<br><br>V.<br><br>PARAMOUNT HOTEL GROUP, INC.; PARAMOUNT MANAGEMENT ASSOCIATES, LLC; FAIRFIELD INN BY MARRIOTT, Successors in Interest to Chalet Susse International, Inc.; JOHN DOE, Numbers 1 through 10,<br>Defendants. | : | C.A. No. 05-031L |

**MEMORANDUM OF LAW IN SUPPORT OF PARAMOUNT HOTEL GROUP, INC. AND PARAMOUNT MANAGEMENT ASSOCIATES, LLC'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Paramount Hotel Group, Inc and Paramount Management Associates, LLC (collectively "Paramount" or "Defendants") hereby move for summary judgment. As a matter of law, the undisputed facts demonstrate the following:

- Plaintiff has failed to exhaust her administrative prerequisites to suing the Paramount Defendants;
- Plaintiff cannot establish a *prima facie* case of discrimination because she was not adequately performing her job at the time of termination;
- Paramount had legitimate, non-discriminatory business reasons for taking any actions it took vis-à-vis Plaintiff; and
- Plaintiff cannot prove that Paramount's articulated business rationales are in fact pretexts for unlawful discrimination.

Defendants therefore respectfully request that the Court dismiss Plaintiff's Complaint against them in its entirety.

## II. FACTS

### 1. Paramount Background

Paramount Management Associates, LLC ("PMA") is a hotel management company. (Defendants' Rule 12.1 Statement of Undisputed Facts at ¶ 1.)[1] Paramount Hotel Group, Inc. is the parent company of PMA. Beginning in early 2000, all employees at the Warwick Susse Chalet were actually employees of PMA. They filled out Paramount applications, completed Paramount w-4 forms and received paychecks from Paramount. The Susse Chalet was simply a brand name and not a standalone corporation. In 2001, Paramount converted the Susse Chalet property and "reflagged" it as a Fairfield Inn by Marriott. (Statement at ¶¶ 2-4). Again, Fairfield Inn by Marriott is a brand name and not a corporation. All employees continued to be employed by PMA. (Statement at ¶ 4).

### 2. Plaintiff's Hire and Employment

Plaintiff, who is African American, completed an application to work for Paramount as a housekeeper at the Susse Chalet in June of 2000. (Statement at ¶ 5). Dennis Bellucci, Executive Housekeeper, hired Plaintiff on the spot at the time that she filled out her application, even though her admission that she had served time in connection with a drug related conviction could have served as a bar to her employment. (Statement at ¶ 7). Throughout her employment, Plaintiff referred a number of African American friends, all of whom Mr. Bellucci hired. (Statement at ¶ 9).

Plaintiff worked for Paramount for nearly two years. Her performance was not, however, without issue. In December of 2000, she received a warning for insubordination because she swore at her supervisor, Mr. Bellucci. In April of 2001, she received a warning and a suspension for failing to change a blood stained pillow case in one of the rooms Mr. Bellucci had assigned

---

[1] Hereinafter, ("Statement at ¶___).

her to clean. Both of these incidents are documented; Plaintiff signed off on both warnings. (Statement at ¶¶ 11-13).

3. Plaintiff's Termination

In April of 2002, the general manager of Plaintiff's hotel, Carlos Cerda, went into one of the rooms Plaintiff had cleaned after a guest had checked out because the guest had called indicating that he had left some personal property in the room. Mr. Cerda discovered that Plaintiff had not changed the sheets in that room. Mr. Cerda then asked that Mr. Bellucci more closely monitor Plaintiff's work. Later that week, Mr. Bellucci "marked" the sheets of one of Plaintiff's rooms with a ball point pen. He then checked her room after she had completed cleaning it and saw the tell-tale ball point pen mark on the sheets showing that she had failed to change the bed linens after the guest checked out.[2] The next day, Mr. Bellucci and Mr. Cerda met with Plaintiff to discuss these violations of company policy. Although Plaintiff denied that she had failed to change the sheets, she could not refute the fact that the ball point pen mark had been found on the sheets in this room. (Statement at ¶ 14). Failing to change bed linens is a severe policy violation. (Statement at ¶ 16). Therefore, based on her prior warnings and their investigation into her work, Messrs. Cerda and Bellucci terminated Plaintiff on April 11, 2002. (Statement at ¶ 15).

4. Plaintiff's Allegations of Discrimination

At her deposition on July 22, 2005, Plaintiff testified as follows:

Q. . . . . Do you believe you were discriminated against?

A. Yes, I do.

Q. Why do you believe you were discriminated against?

2 Mr. Bellucci had employed this technique in the past with white employees to confirm they were changing bed linens.

A. I believe I was discriminated against by Dennis. It was just an issue with me and him. He just didn't like me. I think Carlos [Cerda] upheld it and went along with whatever Dennis was saying to try to terminate me.

Q. Why do you believe that Dennis didn't like you?

A. I don't know. I don't know his reasons. You'd have to ask him.

Q. Did you ever ask him if he liked you?

A. No, because I really did not care if he liked me or not. I was there to do a job, and that's what I did.

Q. Do you believe, why do you believe he had a problem with you?

A. I don't know. You're going to have to ask him that question.

(Statement at ¶ 22).

Plaintiff claims that a non-employee construction worker exposed himself to her in 2001 and that Paramount's treatment of her was in someway discriminatory. However, she admits that she waited several days to report the incident, and that once she complained, a meeting was held between Plaintiff, her managers and the construction worker's manager. Although Plaintiff claims that they asked her if she was "sure" about the incident and if she was lying, she also admits that Paramount gave her several days off following her report and that it demanded that the construction worker be expelled from its facilities. Plaintiff never saw him again. (Statement at ¶¶ 24-29). Nonetheless, Plaintiff claims that Paramount discriminated against her because Paramount failed to hire a security guard for her thereafter and because she believes it would not have asked a white woman if she was sure the incident happened or if she was lying. (Statement at ¶¶ 30-31).

Plaintiff also claims that on numerous occasions, she reported to work, but that Mr. Bellucci sent her home saying there was no work to be done that day. She did not know if other non-black employees were similarly taken off the schedule due to a lack of work. (Statement at ¶ 32). Ironically, Plaintiff also now complains that Mr. Bellucci would add hours onto her work

day and that this too was somehow race based. (Statement at ¶ 32). Plaintiff claims that she had to work holidays that other non-Black employees got off, but she had no idea how scheduling was done at Paramount. (Statement at ¶ 32). Plaintiff alleges that her request to work on the first floor after the construction worker incident was also denied because a white employee was already assigned that floor. (Statement at ¶ 31).

Plaintiff's only proffered evidence of racially discriminatory animus is her claim that Mr. Bellucci allegedly called her "Aunt Jemina" 4-5 times during her employment[3] and because Mr. Bellucci told her she resembled his best friend John, who is apparently African American. (Statement at ¶ 23). Plaintiff testified that she never met or saw "John" and does not know if she resembles him, nor could she explain why this remark was racial. (Statement at ¶ 23).

5. Plaintiff's Charge

On November 13, 2002, Plaintiff filed a charge of discrimination against Fairfield Inn by Marriott with the Rhode Island Commission for Human Rights (the "Commission"). (Statement at ¶ 19). Plaintiff failed to name Defendants in her charge. (Statement at ¶ 20). The Commission issued a right to sue to Plaintiff regarding her claims against Fairfield Inn by Marriott. It issued no right to sue notice with respect to the Paramount Defendants. Plaintiff filed her lawsuit, alleging race discrimination in violation of the Rhode Island Fair Employment Practices Act against all the named parties thereafter. (Statement at ¶ 21).

---

3 Plaintiff testified that she wore a headscarf while she worked. Related to this claim, Plaintiff testified that in early April of 2002, the hotel held a "mandatory" meeting in her absence and "everyone" voted that no headscarves should be worn at work. She also testified that she did not know about such a meeting, did not get in trouble for not attending the meeting and that Mr. Cerda was unaware that the alleged meeting took place. (Statement at ¶ 33).

## III. ARGUMENT

### A. Courts Grant Summary Judgment Motions In Employment Cases When The Plaintiff Cannot Show a Genuine Issue of Material Fact And The Defendant-Employer Is Entitled To Judgment As A Matter Of Law.

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56 advisory committee's note), rev'd and remanded on other grounds, 976 F.2d 77 (1st Cir. 1992); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Russell v. Enterprise Rent-A-Car Co. of R.I. and Enterprise Rent-A-Car Co., Inc., 160 F. Supp. 2d 239, 249 (D. R.I. 2001).

When requesting summary judgment, the moving party "must put the ball in play, averring 'an absence of evidence to support the nonmoving party's case.'" Garside, 895 F.2d at 48 (quoting Celotex, 477 U.S. at 325). The opposing party must then point to some material factual dispute contained in the record in order to avoid summary judgment.

It is well settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . . In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-252 (1986).

A non-moving party cannot create genuine issues of fact through mere speculation about evidence that might be produced at trial. On issues where the non-movant bears the burden of

proof, she must present definite, competent evidence to rebut the motion. See Anderson, 477 U.S. at 256-57; Garside, 895 F.2d at 48. The evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989); see also Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st Cir. 1990) (non-movant cannot rest "merely upon unsupported allegations and speculations"); Garside, 895 F.2d at 49 ("a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax"). In fact, this Court has held that a material fact is one "that might affect the outcome of the suit under the governing law." Russell, 160 F. Supp. 2d at 249 (citing Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995), quoting Anderson, 477 U.S. at 248).

Disputes where concepts such as motive or intent are at issue do not foreclose summary judgment. Thus, summary judgment can be, and often is, appropriate in employment discrimination cases "where the party resisting judgment relies 'upon conclusory allegations, improbable inferences and unsupported speculation' as to any essential element in her claim." Byrd v. Ronayne, 61 F.3d 1026, 1030 (1st Cir. 1995) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

B. Plaintiff Failed to Exhaust Her Administrative Remedies.

In order to bring an action under the RIFEPA, Plaintiff must first exhaust her administrative remedies by timely filing a charge with the Rhode Island Commission for Human Rights and obtaining a Notice of Right to Sue. R.I. Gen. L. § 28-5-24.1. Failure to exhaust administrative remedies is a fatal defect in a suit under the RIFEPA. Paulo v. Cooley, Inc., 686 F. Supp. 377, 382 (D.R.I. 1988).

In the instant case, Plaintiff signed the charge under oath and filed it against only the Fairfield Inn by Marriott. (Statement at ¶ 19). All communication, including the right to sue notice, was addressed to entities other than the Paramount Defendants. (Statement at ¶ 21).

Plaintiff's failure to file a charge against, and to receive a notice of right to sue regarding Defendants, dooms her claim. In Valletta v. TSA Stores, Inc. d/b/a The Sports Authority, Inc. and Scott Chamberlain, C.A. No. 04-211-ML (D.R.I., Oct. 27, 2004)[4], Judge Lisi dismissed plaintiff's RIFEPA claims against Defendant Chamberlain where plaintiff failed to name him as a respondent in her charge and where plaintiff received a right to sue notice identifying only TSA Stores, Inc. as a respondent. The Court noted that there are remedial and investigative measures that the Commission must statutorily be allowed the opportunity to utilize before a complainant has exhausted her administrative remedies prior to bringing suit. The Court determined that Valletta had failed to so satisfy the RIFEPA prerequisites to commencing suit with respect to Chamberlain and this precluded her from continuing her lawsuit against this defendant.

Similarly, because Ashley failed to name the Paramount Defendants in her charge and did not receive the requisite notice of right to sue these Defendants, her RIFEPA claims (the only claims asserted against these Defendants) should be dismissed.

C. In Order to Survive Summary Judgment, Ashley Must Show That There Are Facts Which, If Proved, Would Warrant Judgment Against Defendants Under The Rhode Island Fair Employment Practices Act.

1. The Rhode Island Fair Employment Practices Act

The RIFEPA recognizes "the right of all individuals in this state to equal employment opportunities, regardless of race or color, religion or sex". R.I. Gen. Laws § 28-5-5. The

[4] A copy of this unpublished decision has been sent to Judge Lagueux and counsel for Plaintiff via letter dated November 28, 2005.

RIFEPA is the Rhode Island analog to Title VII. See Wyss v. General Dynamics Corp., 24 F.Supp.2d 202, 210 (D.R.I. 1998). The RIFEPA states in pertinent part:

> It shall be an unlawful employment practice: (1) for any employer: (i) to refuse to hire any applicant for employment because of his or her race or color, religion, sex, disability, age, sexual orientation, or country of ancestral origin, or (ii) Because of such reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment . . .."
>
> R.I. Gen. Laws § 28-5-7 (2000).

R.I. Gen. Laws § 42-112-1.

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973),[5] and its progeny, the United States Supreme Court held that, in order to prove race discrimination against Defendants under the RIFEPA, Plaintiff must demonstrate a link between her membership in a protected class (here, her race) and an adverse employment action by Defendants.

Under the McDonnell Douglas burden-shifting approach, Plaintiff must initially establish a *prima facie* case of prohibited discrimination by a preponderance of the evidence. Under well-settled law, to establish a *prima facie* case of race discrimination, Plaintiff must show that she: (i) was in the protected category; (ii) was performing her job satisfactorily; (iii) was subject to a materially adverse employment action; and (iv) non-black males were treated more favorably. Smith v. Stratus Computer, Inc., 40 F.3d 11, 15 (1st Cir. 1994). The Rhode Island Supreme Court has stated that this burden shifting evidentiary framework is designed to "allocate[] burdens of production and order[] the presentation of evidence so as 'progressively to sharpen

---

5 The Rhode Island Supreme Court has held that it is often appropriate to refer to federal decisions dealing with anti-discrimination laws when interpreting analogous Rhode Island statutes. See Narragansett Electric Co. v. Rhode Island Commission for Human Rights, 374 A.2d 1022, 1023 (R.I. 1977); Newport Shipyard, Inc. v. Rhode Island Commission for Human Rights, 484 A.2d 893, 897-98 (R.I. 1984).

thee inquiry into the elusive factual question of intentional discrimination.'" Center for Behavioral Health, Rhode Island, Inc. v. Barros, 714 A.2d 680, 685 (R.I. 1998) quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995).

Should Plaintiff meet this burden of proving a *prima facie* case of discrimination, the burden shifts to the Defendants to articulate some legitimate, non-discriminatory rationale for their employment action. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44-45 (1st Cir. 2002). Once the employer meets this burden, the presumption of discrimination raised by Plaintiff's *prima facie* case drops out of the picture. Id. at 45 (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000)). Plaintiff then has the burden of showing that the employer's proffered reason was pretextual and that the real motivation was race discrimination. Id. As the Supreme Court emphasized in Reeves, "the ultimate question is not whether the explanation was false, but whether discrimination was the cause [for the adverse action]." Id. Under Reeves,

> An employer would be entitled to judgment as a matter of law if the record conclusively revealed some other nondiscriminatory reason for the employer's decision, or if plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. At all times, Plaintiff bears the ultimate burden of proof. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993).

2. Plaintiff Cannot Meet Her *Prima Facie* Case

As an initial matter, Plaintiff cannot show she was satisfactorily performing her job or that non-blacks were treated more favorably. Paramount repeatedly counseled Plaintiff for performance issues, culminating in her termination in April of 2002 for failing to change the bed linens in a guest room after an investigation into whether she was properly cleaning the guest rooms assigned to her. Plaintiff admits that this is a policy violation and a terminable offense.

Additionally, while Plaintiff provides a laundry list of ways in which she felt she was not treated fairly by Paramount managers, she does not, and cannot, as she must, provide credible information regarding non-Black employees who were treated more favorably. Therefore, she fails to state a *prima facie* case and her claims of discrimination must fail. See Rossi v. Amica Mut. Ins. Co., 2005 U.S. Dist. LEXIS 3269 (D. R.I., Feb. 9, 2005) (Dismissing Plaintiff's discrimination claims for failing to state a *prima facie* case).

D. Defendants Have Stated a Legitimate Business Reason For Any Action Taken and Plaintiff Cannot Show the Requisite Pretext to Survive Summary Judgment.

Assuming *arguendo* that Plaintiff can state a prima facie case of discrimination, the undisputed facts show that Defendants made a legitimate, non-discriminatory business decision to terminate Plaintiff for failing to change the bed linens in one of the rooms she was supposed to clean. The decision followed an investigation by Plaintiff's managers to determine whether Plaintiff had violated Defendants' policies in this respect. While Plaintiff is free to disagree with the decision, her failure to produce competent, sufficient evidence that Defendants' stated reason is false (i.e., a pretext) is fatal to her claim.

Indeed, Plaintiff cannot offer *any* evidence that the reasons offered are pretextual or false.[6] Plaintiff's uncorroborated belief that Defendants somehow targeted her because of her race is, without more, insufficient to rebut Defendants' articulated legitimate, non-discriminatory reasons. See Nicolae v. Miriam Hosp., 847 A.2d 856, 860-1 (R.I. 2004) (affirming summary judgment where Plaintiff presented no credible evidence that employer's reasons were not the true reasons); Reidy v. The Travelers Ins. Co., 928 F. Supp. 98, 108 (D. Mass. 1996), aff'd, 107 F.3d 1 (1st Cir. 1997) (employee's "mere allegations," without further proof, that his former

---

6 Not only did Defendants have legitimate, non-discriminatory reasons for terminating Plaintiff, but reviewing Plaintiff's allegations in the light most favorable to her, it also had non-racial, business reasons for asking Plaintiff not to wear a head scarf, taking her off the schedule, and assigning her rooms to clean.

employer replaced him with a younger person are insufficient to meet plaintiff's burden of stating a *prima facie* case of age discrimination); Hanlon v. Charles Bird & Son, Inc., 1987 U.S. Dist. LEXIS 357 (D. Mass. 1987) (employee's subjective belief that his employer terminated him because of his membership in a protected class is not enough, without more, to meet his burden of stating a *prima facie* case of discrimination); Aramburu v. Boeing Co., 112 F.3d 1398, 1409 (10th Cir. 1997) (employee's subjective belief that he was discriminated against based on his national origin insufficient to show that employer actually discriminated against him).

To establish a pretext, Plaintiff must "identify and relate specific instances where persons similarly situated 'in all relevant aspects' were treated differently." See Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)); Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994) (Plaintiff must produce sufficient evidence to show illegal sex discrimination motivated adverse employment action). Whether a person is similarly situated depends on a comparison of performance, qualifications, and conduct. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 130, 686 N.E.2d 1303 (1997). Plaintiff cannot point to any similarly situated non-black individuals who were treated more favorably than she. Plaintiff offers only her speculation that racially neutral events, i.e., her assignment to clean a certain floor, the reduction and increase of her hours, were somehow racially driven. This is wholly insufficient to sustain a discrimination claim at this stage. Barros, 710 A.2d at 685 (to demonstrate pretext, "a plaintiff must do more than simply cast doubt on an employer's justification").

Not only does Plaintiff fail to demonstrate that Defendants' decisions were motivated by her race, but the facts and statistical data provide substantial support to the contrary. In essence, she offers only the "Aunt Jemima" comment, which, construing the facts in the light most favorable to her, was uttered at most five times over a two year period, a remark that Plaintiff

resembled Mr. Bellucci's best friend, an African American, and some racially neutral scheduling/assignment issues. It is well established that, in analyzing discrimination cases, "isolated or ambiguous remarks, tending to suggest animus based on [protected class status], are insufficient, standing alone, to prove an employer's discriminatory intent." Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996) quoting Blare v. Husky Injection Molding Sys., 419 Mass. 437, 646 N.E. 2d 11, 118 n. 9 (Mass. 1995). Furthermore, the undisputed record demonstrates that Mr. Bellucci, a gay male, with a particular sensitivity to discrimination issues, hired Plaintiff in spite of her admitted criminal conviction record, knowing she was Black at the time of her hire. (Statement at ¶¶ 6-7). It is well established that "in cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." LeBlanc v. Great American Insurance Co., 6 F.3d 836, 847 (1st Cir. 1993) (quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)).

Additionally, Mr. Bellucci hired the Black friends Plaintiff referred to work with her at Paramount. It strains credibility that Plaintiff would refer her minority friends, and that Mr. Bellucci would hire them, if Paramount maintained such a hostile working environment for Blacks. Moreover, Paramount's repeated attempts to counsel her and to help her improve her performance over a two year period support the opposite conclusion – that Plaintiff was herself treated quite fairly throughout her employment with Paramount.

Paramount maintains stringent equal employment opportunity policies, which promise to provide equal employment opportunities for all employees and applicants without regard to race, sex, religion, color, age, marital status, sexual orientation, national origin, or disability.

(Statement at ¶ 36).[7] Paramount employs a very diverse work force. For example, during Plaintiff's employment, 12 (16.6%) of the approximately 72 employees employed at her hotel were Black/African American. Sixteen (22.2%) were Hispanic. Of the seven involuntary terminations at that hotel in 2002, two of the employees, including Plaintiff, were Black/African American; four were white and one was Hispanic. (Statement at ¶ 35). This data demonstrates Defendants' color blind decision making process.

## IV. CONCLUSION

As a matter of law, Plaintiff cannot establish a race discrimination case against Defendants under the RIFEPA. She cannot demonstrate that they purposefully or intentionally discriminated against her. Because she cannot demonstrate a trial-worthy RIFEPA claim against Defendants, summary judgment should be entered in Defendants' favor.

PARAMOUNT HOTEL GROUP, INC
AND PARAMOUNT MANAGEMENT
ASSOCIATES, LLC

By their Attorneys,

Andrew B. Prescott (#3758)
Stacie Boeniger Collier (#6059)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030

Dated: November 28, 2005

7 Plaintiff acknowledged receiving these policies. (Statement at ¶ 37).

CERTIFICATE OF SERVICE

I hereby certify that I caused to be sent by hand, a copy of the within Memorandum in Support of Plaintiff's Motion for Summary Judgment to Dawn Oliveri, Esq., 160 Plainfield Street, Providence, RI 02909 on this 28th day of November, 2005.