UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| VERONICA ASHLEY, Plaintiff, | : | |
| V. | : | C.A. No. 05-031L |
| PARAMOUNT HOTEL GROUP, INC.; PARAMOUNT MANAGEMENT ASSOCIATES, LLC; FAIRFIELD INN BY MARRIOTT, Successors in Interest to Chalet Susse International, Inc.; JOHN DOE, Numbers 1 through 10, Defendants. | : | |

**AFFIDAVIT OF DENNIS BELLUCCI**

I, Dennis Bellucci, under oath to depose and say as follows:

1. My name is Dennis Bellucci. I was employed by the Paramount Management Associates, LLC ("PMA" or "Paramount") between approximately 1999 and my resignation in September of 2004 as its Executive Housekeeper. My primary responsibilities while at PMA included hiring, training and supervising housekeeping staff and ensuring that guest rooms were clean and comfortable.

2. I worked with Veronica Ashley between June of 2000 and April of 2002. In fact, I hired her on the spot after she completed an application to work for Paramount as a housekeeper in June of 2000. Her primary duties as a housekeeper included cleaning guest rooms.

3. At the time that she applied for employment, I was aware that Ms. Ashley was Black. On her application, Ms. Ashley admitted that she had served time relative to a criminal conviction. Although this can serve as a bar to employment with Paramount, we decided to give her a chance and hired her.

4. Ms. Ashley referred several of her Black friends. I believe that I hired every person referred by Ms. Ashley.

5. I always employed a very diverse staff. I was aware that Paramount had strict policies regarding equal employment opportunity and never made decisions regarding hire, promotion, discipline or termination on impermissible factors, such as race. I am a gay male and am sensitive to discrimination issues.

6. Ms. Ashley had performance issues during her employment. In December of 2000, I gave her a warning for insubordination because she swore at me. I believe she used the "F" word toward me. A true and accurate copy of this warning, signed by Ms. Ashley, is attached at Tab A.

7. In April of 2001, I gave her a warning and a suspension for failing to change a blood stained pillow case in one of the rooms I had assigned her to clean. A true and accurate copy of this warning, signed by Ms. Ashley, is attached at Tab B.

8. In 2001, Ms. Ashley complained that a construction worker, who did not work for Paramount, exposed himself to her and made a sexual advance toward her. She did not even tell me about it – her co-worker did. I followed up with Ms. Ashley and she seemed annoyed that her co-worker told me about it. Even though she did not report this incident right away, we investigated and took her concerns very seriously. I got our manager involved right away. We insisted the construction worker be immediately removed from our work site. We also gave Ms. Ashley some time off after she reported the incident. She never alleged she felt this incident, or our treatment of her, was in any way discriminatory during her employment.

9. She mentioned in passing that she might want to be assigned to work on the first floor, but when I asked her if she did, she said it was not very important to her.

10. In April of 2002, the hotel's general manager, Carlos Cerda, had to go into one of the rooms Ms. Ashley had cleaned after a guest had checked out because a guest had called indicating that they had left some personal property in the room. He told me that he had discovered that Ms. Ashley had not changed the sheets in that room. He asked that I monitor Ms. Ashley's work. Later that week, I marked the sheets of one of Ms. Ashley's rooms with a ball point pen. I then checked her room after she had completed cleaning it and saw the tell-tale ball point pen mark on the sheets showing that she had failed to change the bed linens after the guest checked out. The next day, Mr. Cerda and I met with Ms. Ashley to discuss these violations of company policy. Although Ms. Ashley denied that she had failed to change the sheets, she could not refute the fact that the ball point pen mark had been found on the sheets in this room. Failing to change the sheets is a severe policy violation.

11. I have marked the sheets of non-black employees in the past to confirm whether they were actually changing bed linens.

12. Based on her prior warnings and our investigation into her work, Mr. Cerda and I terminated Ms. Ashley on April 11, 2002. A true and accurate copy of the termination report is attached hereto at Tab C.

13. Ms. Ashley wore a head scarf during much of her employment. I never referred to Ms. Ashley as "Aunt Jemima", nor did I ever hear anyone else do so. She never complained about this to me. We did have an issue with another employee who wore a cut up T-shirt on her head. Because of this other employee, I had to ask all employees to not wear head scarves. Mr. Cerda offered to have Paramount buy them hats, but they declined. I did not have a staff meeting regarding this issue.

14. Ms. Ashley never complained about any issues regarding race. She herself used inappropriate language, such as the "N" word – I never did, nor did I hear any of my staff do so. I heard that her brother won a large discrimination verdict against an employer. After that, Ms. Ashley's attitude seemed to change and I felt that she was almost baiting us.

15. I understand Ms. Ashley complains that I told her not to report to work frequently. While it is true that when our hotel was slow and underbooked, I did not have enough work for all of the housekeepers and would sometimes take them off the schedule. Similarly, if we had extra work, I would ask housekeepers to stay late or clean additional rooms. I treated Ms. Ashley the same as every other housekeeper in this respect.

16. Ms. Ashley's race and color were in no way factors for any decision made regarding her employment.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this 28 day of November, 2005.

Dennis Bellucci

Dennis Bellucci

STATE OF RHODE ISLAND

COUNTY OF PROVIDENCE

Subscribed and sworn to before me this 28th day of November, 2005.

Collette R. Palmer

Notary Public

My Commission Expires: 3/16/06

P129430.1